BANKERS TRUST COMPANY, Appellant-Respondent, v J. V. DOWLER & Co., INC., et al., Respondents-Appellants, and FEDERAL DEPOSIT INSURANCE COMPANY, as Receiver in Bankruptcy of FRANKLIN NATIONAL BANK, Respondent.

First Department, June 15, 1978

## APPEARANCES OF COUNSEL

*Jack H. Weiner* of counsel *(Charles Leeds,* attorney), for appellant-respondent.

*David S. Zeidman* of counsel *(Jerome Kamerman* with him on the brief; *Kamerman & Kamerman,* attorneys), for respondents-appellants.

## OPINION OF THE COURT

KUPFERMAN, J. P.

The defendant J. V. Dowler & Co., Inc. (Dowler) was a dealer in municipal bonds between March, 1972 and July, 1974. The plaintiff bank made loans to Dowler secured by such bonds, and also acted as the clearing agent for Dowler with respect thereto. The plaintiff advanced moneys to Dowler on the basis of 90% of the current market value of unsold municipal bonds held by Dowler, and 100% of the market value of bonds which had been sold, the value of the latter being evidenced by sales tickets delivered to the plaintiff bank for settlement at a future date. The agreement between the parties as to the amount of the loan was oral, although there was a broad security agreement dated March 1, 1972 executed by Dowler, which gave the bank, among other things, the power "in case the Bank deems itself insecure" to sell the collateral without notice.

Dowler, which was purchasing bonds for its own account to resell at higher prices, was caught in the depressed municipal bond market, which occurred at the time of the New York City financial crisis. In order to sustain its position, Dowler entered into an arrangement with the Franklin National Bank, now insolvent (which is why the Federal Deposit Insurance Company, as receiver thereof, is a party defendant), whereby Dowler sold bonds (there are five different large bond purchases here involved covering Oregon, Florida and Arizona instrumentalities) to Franklin and agreed to repurchase these bonds at $1 a bond profit for Franklin. E.g., on June 26 Dowler bought $435,000 par value Florida Board of Education bonds at 93.19. The plaintiff bank received the bonds and debited Dowler's account $417,024. That same day, Dowler

presented a sales ticket to plaintiff bank which represented that the securities had been sold to Franklin for settlement July 16. With that, the bonds were put on the "sold" list, and Dowler received 100% financing on the bonds. Dowler and Franklin were at that time in agreement that Dowler would buy back the bonds from Franklin at a profit of $1 per bond for a total profit to Franklin of $435.

There is a question raised of whether these were repurchase agreements or bona fide purchase and sale agreements, but in any event, under the circumstances, they were clearly suspect. When the plaintiff discovered the situation, Dowler was given one day in which to cover the additional collateral. Dowler sought help from a sympathetic Chase Manhattan Bank where he had a friend, but was unsuccessful in obtaining any succor in the swiftly declining market. The plaintiff bank then liquidated the bonds which it had held as collateral and now sues, among other things, to recover the deficiency.

The defendants moved for summary judgment dismissing plaintiff's third cause of action of alleged misrepresentations on the sales tickets with Franklin National Bank, on the ground that the plaintiff's hasty action in selling out the collateral was negligent and in violation of subdivision 2 of section 9-502 of the Uniform Commercial Code requiring that the secured party "must proceed in a commercially reasonable manner". (See, also, Uniform Commercial Code, § 9-504, subd [1]; § 9-207, subd [1].) The plaintiff cross-moved for summary judgment.

The court at Special Term referring to subdivision (3) of section 9-501 correctly stated that "the parties, by agreement, may determine the standards by which the fulfillment of the rights and duties of the secured party may be measured." However, the determination that the security agreement between the parties failed to shed any light on this question, thus raising an issue of fact precluding summary judgment, we find to be erroneous.

Confronted with a classic "wash sale" or "kiting" situation, in a clearly declining market, the plaintiff bank had to act. If it had delayed longer than it did, it might well have been met with a defense charging negligence in the disposition of the collateral.

The order of the Supreme Court, New York County (GREEN-FIELD, J.) of March 3, 1977 should be modified, on the law, to

grant the cross motion for summary judgment, and otherwise affirmed, without costs.

Settle order on notice.

LANE, SANDLER and SULLIVAN, JJ., concur; LUPIANO, J., dissents and would affirm on opinion of GREENFIELD, J.

Order, Supreme Court, New York County, entered on March 3, 1977, modified, on the law, to grant the cross motion for summary judgment, and otherwise affirmed, without costs and without disbursements.

Settle order on notice.